DON GRAY v. THE STATE.

No. 12988. Delivered December 3, 1930.
Reported in 33 S. W. (2d) 457.

The opinion states the case.

*A. G. Mueller* of Llano and *G. A. Walters* of San Saba, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of cattle; punishment, two years in the penitentiary.

This is a companion case on its facts to cause No. 12987. Kuykendall v. State, opinion this day handed down, and we regard the reasoning on the facts in that opinion and our conclusion upon the case made by such facts as to dispose of the same questions relative to the guilt of the appellant herein.

In his well prepared brief in this case appellant first insists that the trial court erred in refusing to allow him to prove upon cross-

examination of a State witness, that appellant and his wife shortly after this alleged theft had separated, and that she was at the time of this trial living with her son in Lampasas county, and was unfriendly toward appellant. The relevance of this testimony, if any, rests upon the fact that in his argument to the jury the State's attorney said that it would have been easy for appellant to have placed his wife and daughter-in-law upon the witness stand, they having been present at the time of the killing of the alleged stolen cattle by Kuykendall and appellant, and to have had these witnesses explain the surrounding facts of said occurrence to the jury. The bill of exception presenting this complaint is qualified by the statement of the trial judge without objection of appellant, that appellant's wife and his daughter-in-law were present at the trial under process and were not used as witnesses for the defense. We do not think appellant's proposition that this action of the court in declining to permit the cross-examination referred to, was of materially hurtful effect. The argument of the State's attorney referred to included appellant's daughter-in-law. If she was present at appellant's house at the time the defense claimed the cattle were killed by Gray and Kuykendall, it would appear material that she be used for the defense as a witness to rebut the State's case, and to explain said facts and circumstances. We also seriously doubt if the mere fact that following this alleged theft Mrs. Gray had separated from her husband and was not friendly to him at the time of the trial, would justify any inference that she would not have told the truth if used as a witness in his behalf. We do not believe the matter complained of calls for any favorable action in appellant's behalf by this court.

It is also contended that it was error to permit the foreman of the grand jury to testify that the grand jury made diligent search, investigation and inquiry in order to ascertain the ownership of the alleged stolen cattle. Said foreman of the grand jury was a witness, and, according to the qualification of the bill of exception, testified to the fact that a number of witnesses were brought before the grand jury in an attempt to ascertain who owned the cattle in question, and that several members of the grand jury who were themselves ranchmen and cattle owners, testified before the grand jury that they knew nothing about the ownership of the cattle in question. We perceive no material error in permitting the foreman to go further and give his conclusion in regard to the matter mentioned. We do not see how it could have injuriously affected the

rights of the accused. The testimony legitimately before the grand jury amply satisfied the demands of the law in this regard.

The record shows that when the foreman of the grand jury was turned over to the accused for cross-examination, he was asked by appellant's attorney if either appellant or his co-defendant Kuykendall were before the grand jury, to which he replied in the negative. On re-direct examination the State undertook to show by him that certain efforts were made to notify appellant that he could appear before the grand jury if he so desired, and the witness said that some one phoned to appellant's attorney at Llano. On re-cross-examination he said he would not be positive that the phoning was done, that he just had somebody's word for it. Appellant moved the court to exclude the testimony of the witness in regard to the effort to inform appellant of the fact that he could appear before the grand jury, but the court overruled his request. The entire matter seems to us of such little materiality as that if it be conceded that the court should have excluded the statement of the witness above referred to, his refusal to do so could not have injured the rights of appellant. Beyond question appellant was not before the grand jury. He did not have to go before the grand jury. Ordinarily he would not be expected to appear before the grand jury under such circumstances. His guilt of theft of the cattle,—the issue in this case,—could in nowise have been affected by reason of whether he got the word or his attorney was phoned to.

Appellant's co-defendant Kuykendall brought to a meat market in San Saba a number of carcasses of slaughtered animals early one morning. Suspicion being aroused, the officers went with Kuykendall out to the home of appellant where Kuykendall claimed the animals found in his possession had been slaughtered, by himself and this appellant the night before. Kuykendall told the officers that the heads and hides of the animals were out there. At once upon the arrival of the party at appellant's home he informed them that he had sold the hides to a hide dealer named Ivy who claimed that he lived at Eden. On this trial the State was permitted to introduce all the process asked for and issued at the instance of appellant, for the purpose of showing that no attempt had been made to have any witness named Ivy present at the trial to testify for the defense. We think this was proper. The State was claiming that the heads and hides of the cattle in question were destroyed, and that evidence of that fact was found in the pasture of appellant after the cattle were killed. The defense was that the

cattle transaction was an honest one, and that the sale of the hides to Ivy was a part of a legitimate and honest disposition of said cattle. Manifestly if a hide dealer named Ivy who lived at Eden, had been produced by appellant and had testified that he did in fact buy the hides from appellant on the morning in question, this would have greatly strengthened the claim of honesty in the transaction. In Sec. 97 of Branch's Annotated P. C., it is said that relevancy is defined to be that which conduces to the proof of a pertinent hypothesis,—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable. McGuire v. State, 10 Texas Ct. App. 127; Lane v. State, 164 S. W. Rep. 380, are cited. It is also there said that testimony which isolated from the other facts in the case would be irrelevant, may become relevant when viewed in the light of and in connection with other testimony adduced on the trial. Supporting authorities are Campbell v. State, 15 Texas Ct. App. 513; Miller v. State, 31 Texas Crim. Rep. 637; Williams v. State, 40 Texas Crim. Rep. 501; Marchen v. State, 45 Texas Crim. Rep. 214. It is difficult to perceive how it could be that if the accused declines to support, or make any effort to support, a relevant issue which his testimony injects into the case,—the State might not legitimately and for the purpose of rendering improbable the truth of this testimony, prove as an affirmative fact that appellant has made no effort to get obtainable testimony to support the issue referred to.

We have examined the remaining contentions advanced in the brief and referable to the bills of exception in the record, and believe same to be disposed of in the opinion in the companion case above referred to.

No error appearing, the judgment will be affirmed.

*Affirmed.*

HAWKINS, J., absent.