931 F.2d 894
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven K. HUTZENLAUB, Defendant-Appellant.
 No. 90-3405.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1991.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and FORESTER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Steven K. Hutzenlaub appeals the district court's judgment revoking probation and imposing sentence. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Hutzenlaub was arrested for fraudently obtaining money and property from Wm. B. Reily and Company, Inc. (Reily). Hutzenlaub telephoned Reily in New Orleans and falsely identified himself as Steven Hutz, a representative of Digital Equipment Corporation, a New York company. Hutzenlaub represented to Reily that Digital Equipment Corporation was interested in purchasing coffee products for use in self-service coffee vending machines. Hutzenlaub placed an order for coffee products, causing two shipments of coffee products worth approximately $8,400.00 to be forwarded to his mother's private address in New York.
 
 
 3
 On February 8, 1988, a criminal complaint was filed in the United States District Court for the Eastern District of Louisiana charging Hutzenlaub with wire fraud and interstate transportation of stolen property. On June 2, 1988, a three-count indictment was returned against Hutzenlaub, charging him with wire fraud, in violation of 18 U.S.C. Secs. 1343, 2. Pursuant to Fed.R.Civ.P.Rule 20, the case was transferred to the United States District Court for the Southern District of Ohio.
 
 
 4
 On July 19, 1988, Hutzenlaub pled guilty to one count of wire fraud. Pursuant to the plea agreement, the government dismissed counts two and three of the indictment. The federal sentencing guidelines were not applied because the offense occurred prior to November 1, 1987. The probation officer recommended that Hutzenlaub be imprisoned for one year and assessed a $300.00 fine. On October 14, 1988, Hutzenlaub was sentenced to three years imprisonment, a special assessment fee of $50.00, and was ordered to make restitution in the amount of $8,436.00. On March 14, 1989, the sentencing judge sustained Hutzenlaub's motion for reduction of sentence, suspended execution of the balance of the sentence, and placed Hutzenlaub on probation for three years.
 
 
 5
 After his release from confinement, Hutzenlaub moved to New York to live with his mother. His probation officer, Margarette Foster, then requested a New York Probation Office to accept temporary courtesy supervision and to consider permanent supervision of Hutzenlaub. The Uniondale, New York Probation Office consented to temporary supervision. On April 3, 1989, Hutzenlaub telephoned his probation officer, and told her that he had decided to live in Boca Raton, Florida with his grandmother. Again, the probation officer requested courtesy supervision and consideration of transfer supervision from the Boca Raton Probation Office. The Boca Raton Office denied the requested transfer after reviewing Hutzenlaub's file. While the probation officer was attempting to transfer Hutzenlaub to Florida, she received a letter from the Uniondale, New York Probation Office advising that due to Hutzenlaub's behavior during their temporary supervision of him, their office would not accept him for further supervision.
 
 
 6
 Thereafter, Hutzenlaub returned to Ohio, where he was placed on low activity supervision with high activity monitoring as needed. Although Hutzenlaub regularly phoned his probation officer, he seldom reported physically. On December 21, 1989, his probation officer received a telephone call from a Miami Township police officer informing her that Hutzenlaub had been passing bad checks in the area. He was indicted for writing bad checks on April 19, 1990, although the charges were later dismissed.
 
 
 7
 On January 4, 1990, Hutzenlaub met with his probation officer and his status was restructured to high activity probation directives. He was directed to report daily to the Probation Office in Dayton, Ohio, with the exception of legal holidays. Hutzenlaub complied with this directive from January 5, 1990 to January 12, 1990. With court approval, Hutzenlaub left for New York on January 12, 1990, expected to return on January 18, 1990. On January 22, 1990, the probation officer received a telephone call from John Holden, an attorney, seeking to arrange for Hutzenlaub to reside outside the Southern District of Ohio.
 
 
 8
 Hutzenlaub did not return to Ohio or contact his probation officer. On February 13, 1990, Hutzenlaub's probation officer filed a petition asking that Hutzenlaub be brought before the court to show cause as to why his probation should not be revoked. The probation officer alleged in the petition that Hutzenlaub had violated his probation in that he failed to submit monthly written reports and he had not notified her of a change of residence or employment. On March 1, 1990, Hutzenlaub was arrested at his grandmother's residence in Florida and returned to the Southern District of Ohio. On March 23, 1990, Hutzenlaub appeared before the sentencing judge, represented by attorney Daniel Brinkman. Both Hutzenlaub and Brinkman were informed by the court that if Hutzenlaub admitted to the violations, his probation officer, Foster, would not have to testify and his probation would likely be revoked. Nonetheless, Hutzenlaub admitted that he had violated the terms of his probation. On April 16, 1990, John Rion, of John Rion and Associates, with whom Daniel Brinkman was associated, filed a sentencing memorandum on Hutzenlaub's behalf. In his memorandum, Rion argued that the violations were technical in nature and that a forty-seven day incarceration period would deter further violations. Thereafter, on April 20, 1990, at a hearing attended by Hutzenlaub, Rion, and Foster, the judge revoked Hutzenlaub's probation and ordered that the original sentence of three years imprisonment be enforced, with credit for time already served. This appeal followed.
 
 
 9
 Hutzenlaub raises two issues on appeal: (1) whether his attorney below rendered ineffective assistance of counsel; and (2) whether the district court abused its discretion and violated the Eighth Amendment in revoking Hutzenlaub's probation and imposing sentence.
 
 II.
 
 10
 Hutzenlaub first contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. The Supreme Court has stated that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact" and therefore subject to de novo review. Strickland v. Washington, 466 U.S. 668, 698 (1984).
 
 
 11
 In order to show that his counsel's assistance was so defective as to require reversal, or in this instance a remand, Hutzenlaub must show that his counsel was not functioning as the counsel guaranteed him by the Sixth Amendment because of the alleged errors and that the errors were so serious as to amount to a deprivation of a fair and reliable proceeding. Id. at 687. The two-part inquiry here involves an evaluation of the attorney's performance and a determination of whether such performance prejudiced Hutzenlaub. There is, however, no need to address both components if the court finds that Hutzenlaub fails under either one. Id. at 697. In order to succeed on this claim he must satisfy both components of the ineffective assistance of counsel inquiry.
 
 
 12
 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Unless the alleged deficiencies are prejudicial, an ineffective assistance claim cannot succeed. Id. at 692. "It is not enough for [Hutzenlaub] to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Hutzenlaub "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. With these principles in mind, we find that Hutzenlaub has failed to establish that his counsel's assistance prejudiced the proceedings below.
 
 
 13
 Hutzenlaub contends that he was denied effective assistance of counsel in two respects: (1) by Daniel Brinkman, when on March 23, 1990, Brinkman advised Hutzenlaub to admit to the probation violations; and (2) by John Rion, when on April 20, 1990, his argument on Hutzenlaub's behalf consisted of repeating the contents of his earlier submitted memorandum. The record before the sentencing judge easily supported the allegation that Hutzenlaub had violated the terms of his probation. Hutzenlaub's probation officer, Foster, was prepared to testify against him, and her testimony would have been corroborated by the actions of the Uniondale, New York Probation Office and the Boca Raton Probation Office. The record clearly reflects that Hutzenlaub's failure to admit to the violations would not have substantially affected the outcome of the hearing. Moreover, John Rion's representation at the hearing did not prejudice Hutzenlaub. Rion prepared a memorandum prior to the mitigation hearing and asked the court for leniency. Rion also questioned Hutzenlaub for the court's benefit. The fact that Rion relied primarily on his memorandum at the hearing does not show prejudice. In sum, even if Rion could have done more, such as emphasized the alleged inconsistencies in the different memoranda submitted by the probation officer or spent more time investigating the memoranda prepared by the probation officer, there is no showing that such other acts on the part of Rion would have changed the outcome of the hearing. Also, we are not persuaded by Hutzenlaub's claim that the probation officer did not provide his counsel with the memoranda submitted to the court.
 
 
 14
 "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland, 466 U.S. at 693. This Hutzenlaub has failed to do. Therefore, we find that Hutzenlaub has failed to establish prong two of the ineffective assistance of counsel claim.
 
 III.
 
 15
 Next Hutzenlaub contends that the sentencing judge abused his discretion in revoking Hutzenlaub's probation and imposing the original three-year imprisonment term. Such abuse by the sentencing judge, Hutzenlaub argues, constitutes cruel and unusual punishment in violation of the Eighth Amendment. We disagree.
 
 
 16
 As noted earlier, the offense to which Hutzenlaub pled guilty, wire fraud, was committed prior to November 1, 1987, and therefore the sentencing guidelines did not apply to him. Hutzenlaub concedes this point. In addition, the maximum statutory sentence for wire fraud is five years. As he must, Hutzenlaub concedes this fact as well. Finally, Hutzenlaub concedes that the length of his sentence, as long as within the five year statutory range, was within the discretion of the sentencing judge.
 
 
 17
 Notwithstanding the above concessions, Hutzenlaub asserts that the sentencing judge abused his discretion because he failed to impose the guideline range for a wire fraud offense, and because he failed to impose the sentence recommended by the probation officer. Neither of Hutzenlaub's contentions here have any merit.
 
 
 18
 First, as the guidelines were not in effect when Hutzenlaub committed the offense, the guideline range for such an offense is simply not relevant. The appropriate question is whether the sentencing judge stayed within the bounds of the criminal statute. See United States v. Johnson, 831 F.2d 124, 129 (6th Cir.1987), cert. denied sub nom. Taylor v. United States, 485 U.S. 968 (1988) ("As a general rule, a sentencing decision by a district judge is unreviewable if it is within the statutory limits.") (citing United States v. Barbara, 683 F.2d 164 (6th Cir.1982)). Second, it is true that the initial report of the probation officer recommended that Hutzenlaub receive a one-year term of imprisonment. The sentencing judge, however, is not bound by the recommendation of the probation officer. Again, the question is whether the sentence imposed is within the statutory maximum.
 
 
 19
 Hutzenlaub has cited no case law whatsoever for his argument that the sentencing judge abused his discretion in imposing the three-year sentence. We find no abuse of discretion. Seldom have we read a record that demonstrated such a degree of tolerance or greater attempt at accommodation by a district judge. The three-year sentence Hutzenlaub received is well within the statutory limit. See United States v. Frost, 914 F.2d 756, 773 (6th Cir.1990) (" '[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.' ") (quoting Dorszynski v. United States, 418 U.S. 424, 431 (1974)); Yeager v. Estelle, 489 F.2d 276, 276 (5th Cir.1973), cert. denied, 416 U.S. 908 (1974) ("[A] sentence within the statutory limits will not be upset unless it is so disproportionate to the crime committed that it shocks human sensibilities.").
 
 
 20
 Nor does Hutzenlaub cite any authority for his Eighth Amendment contention. Moreover, his assertion is contradicted by existing authority. See, e.g., United States v. Afflerbach, 754 F.2d 866, 871 (10th Cir.), cert. denied, 472 U.S. 1029 (1985) ("Appellants' assertion of cruel and unusual punishment must fail because the sentences they received were all within the statutory limits."). We conclude that the sentencing judge did not abuse his discretion and that no Eighth Amendment violation is present.
 
 IV.
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Karl S. Forester, District Judge for the United States District Court for the Eastern District of Kentucky, sitting by designation